**Nos. 22-3593, 23-1285**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE EIGHTH CIRCUIT**

---

**ASSOCIATED ELECTRIC COOPERATIVE, INC.**

*Petitioner,*

**v.**

**FEDERAL ENERGY REGULATORY COMMISSION,**

*Respondent,*

and

**SOUTHWEST POWER POOL,**

*Intervenor.*

---

On Petition for Review of
Orders of the Federal Energy Regulatory Commission

---

**REPLY BRIEF OF PETITIONER**
**ASSOCIATED ELECTRIC COOPERATIVE, INC.**
**IN CASE NOS. 22-3593, 23-1285**

---

Lawrence C. Friedman (MO/34382)
Matthew Dollan (MO/71867)
**THOMPSON COBURN LLP**
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
(314) 552-7000 FAX
lfriedman@thompsoncoburn.com
mdollan@thompsoncoburn.com

Peter K. Matt
Nicole S. Allen
**THOMPSON COBURN LLP**
1909 K Street, N.W., Ste 600
Washington, D.C. 20006-1167
(202) 585-6900
(202) 585-6969 FAX
pmatt@thompsoncoburn.com
nallen@thompsoncoburn.com

September 11, 2023

*Counsel for Petitioner*
*Associated Electric Cooperative, Inc.*

Appellate Case: 22-3593 Page: 1 Date Filed: 09/12/2023 Entry ID: 5315160

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........ iii

GLOSSARY ........ v

INTRODUCTION AND SUMMARY OF REPLY ........ 1

ARGUMENT ........ 2

I. FERC's and SPP's Interpretation of the SPP Tariff Ignores Key Sections of Attachment AE, Which Are Central To, and Controlling Of, This Dispute........ 2

II. Neither the SPP Tariff Nor the Filed Rate Doctrine Is Applicable to This Dispute. ........ 9

III. The Fact that Associated Electric Submitted E-Tags for the Emergency Energy Transactions Does Not Support FERC's Reasoning in the Underlying Orders. ........ 16

IV. No Special Expertise Is Required to Adjudicate This Dispute. ........ 19

CONCLUSION ........ 24

CERTIFICATE OF COMPLIANCE ........ 26

CERTIFICATE OF VIRUS CHECK ........ 27

CERTIFICATE OF SERVICE........ 28

Appellate Case: 22-3593 Page: 2 Date Filed: 09/12/2023 Entry ID: 5315160

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*Alliant Energy v. Neb. Pub. Power Dist.*,
347 F.3d 1046 (8th Cir. 2003) .................................................. 8

*Ark. La. Gas Co. v. Hall*,
453 U.S. 571 (1981) .................................................. 14

*Ark. La. Gas Co. v. Hall*,
7 FERC ¶ 61,175, *reh'g denied*, 8 FERC ¶ 61,031
(1979) .................................................. 19, 21, 22, 23

*Bd. of Pub. Works v. Wis. Power & Light Co.*,
613 F. Supp. 2d 1122 (D. Minn. 2009) .................................................. 23

*Burlington Res., Inc. v. FERC*,
513 F.3d 242 (D.C. Cir. 2008) .................................................. 14

*Cottonwood Wind Project, LLC v. Neb. Pub. Power Dist., Inc.*,
155 FERC ¶ 61,285 (2016) .................................................. 23

*Hartree Partners, LP v. N. Nat. Gas Co.*,
176 FERC ¶ 61,017 (2021) .................................................. 23

*Idaho Power Co.*,
41 FERC ¶ 61,252 (1987) .................................................. 22

*Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*,
494 F. Supp. 2d 401 (M.D. La. 2007) .................................................. 23

*Old Dominion Elec. Coop.*,
151 FERC ¶ 61,207 (2015) .................................................. 6

*Old Dominion Elec. Coop. v. FERC*,
892 F.3d 1223 (D.C. Cir. 2018) .................................................. 6, 13

Appellate Case: 22-3593 Page: 3 Date Filed: 09/12/2023 Entry ID: 5315160

*S. Md. Elec. Coop., Inc. v. J.P. Morgan Ventures Energy Corp.*, 155 FERC ¶ 61,164 (2016).......................................................... 23

**Statutes**

16 U.S.C. § 824(f) ............................................................. 11

**Other Authorities**

*Improvements to Generator Interconnection Procedures and Agreements*, Order No. 2023, 184 FERC ¶ 61,054 (2023)........... 12

Appellate Case: 22-3593 Page: 4 Date Filed: 09/12/2023 Entry ID: 5315160

## GLOSSARY

| | |
|---|---|
| 2004 Transmission Coordination Agreement | An agreement between Associated Electric and SPP that provided for coordination of data exchange, planning, scheduling, and other aspects of transmission operations. The 2004 Transmission Coordination Agreement was superseded by the 2008 Joint Operating Agreement. |
| 2008 Joint Operating Agreement | An agreement between Associated Electric and SPP concerning the coordinated operation of their respective transmission systems. The 2008 Joint Operating Agreement superseded the 2004 Transmission Coordination Agreement. |
| Associated Electric | Associated Electric Cooperative, Inc. |
| Associated Electric Br. | The initial brief of Associated Electric filed in 8th Circuit Case Nos. 22-3593 and 23-1285. |
| Balancing Authority | The responsible entity that integrates resource plans ahead of time, maintains demand and |

| | |
|---|---|
| | resource balance within a Balancing Authority Area, and supports interconnection frequency in real time. |
| Balancing Authority Area | The collection of generation, transmission, and loads within the metered boundaries of the Balancing Authority. The Balancing Authority maintains load-resource balance within this area. |
| District Court | The United States Federal District Court for the Western District of Missouri. |
| e-Tag | An electronic tag representing a transaction on the North American bulk electric system, which is scheduled to flow within, between, or across electric utility company territories, and which is used for tracking purposes. |
| Emergency Energy Transactions | The sales of emergency energy made by Associated Electric to SPP during Winter Storm Uri, as referenced in the FERC Initial Order, *Sw. Power Pool, Inc.*, 180 FERC ¶ 61,110, at P 1 (2022). |

| | |
|---|---|
| Federal Complaint | Complaint, *Associated Elec. Coop. Inc. v. Sw. Power Pool, Inc.*, No. 6:22-cv-03030 (W.D. Mo. Feb. 11, 2022) |
| FERC | Federal Energy Regulatory Commission |
| FERC Br. | The initial brief of FERC filed in 8th Circuit Case Nos. 22-3593 and 23-1285. |
| FERC Initial Order | *Sw. Power Pool, Inc.*, 180 FERC ¶ 61,110 (2022). |
| Import Interchange Transactions | As defined in Attachment AE of the SPP Tariff, Import Interchange Transactions are "schedule[s] for importing Energy into the SPP Balancing Authority Area." SPP Tariff, Attachment AE, § 1.1 (Definitions I). App. 334 & n.85. |
| Integrated Marketplace | The Energy and Operating Reserve Markets and the Transmission Congestion Rights Markets. |

Appellate Case: 22-3593 Page: 7 Date Filed: 09/12/2023 Entry ID: 5315160

| | |
|---|---|
| Market Participant | Any person or entity that directly participates in and/or receives services from SPP markets and services. A Market Participant can buy and sell SPP services under its Open Access Transmission Tariff. |
| Market Participation Agreement | An agreement executed by Associated Electric's power marketing function for purposes of transacting in the SPP Integrated Marketplace in service of Associated Electric's members. |
| ODEC | Old Dominion Electric Cooperative |
| PJM | PJM Interconnection, L.L.C. |
| Regional Transmission Organization or "RTO" | An organization that FERC has deemed to meet certain criteria, including independence and scope. Regional Transmission Organizations are mandated by FERC to ensure reliable supplies of power, adequate transmission infrastructure, and competitive wholesale prices of electricity. |

| | |
|---|---|
| SPP | Southwest Power Pool, Inc. |
| SPP Br. | The initial brief of SPP filed in 8th Circuit Case Nos. 22-3593 and 23-1285. |
| Tariff | Southwest Power Pool, Inc. Open Access Transmission Tariff, Sixth Revised Volume No. 1, on file with FERC and available at: https://spp.etariff.viewer.aspx. |
| Winter Storm Uri | The major winter storm causing severe destructive weather across the United States, Northern Mexico, and parts of Canada from February 13 to 17, 2021. |

## INTRODUCTION AND SUMMARY OF REPLY

In their initial briefs, the Federal Energy Regulatory Commission ("FERC") and Southwest Power Pool, Inc. ("SPP") continue to mischaracterize the nature of Associated Electric Cooperative, Inc.'s ("Associated Electric") underlying claims in this case. In particular, FERC and SPP continue to erroneously apply FERC's filed rate doctrine to the disputed Emergency Energy Transactions at issue and, in doing so, ignore key sections of the SPP Open Access Transmission Tariff ("SPP Tariff") and other facts in the record, all of which clearly demonstrate that the transactions are not subject to any FERC-filed rate. Accordingly, as explained in Associated Electric's initial brief and clarified in the argument below, FERC's filed rate doctrine is inapposite. Thus, Associated Electric's Federal Complaint was properly submitted to the District Court to evaluate whether communications between Associated Electric and SPP personnel created an oral agreement between the parties with respect to make-whole compensation for the disputed Emergency Energy Transactions, and, relatedly, whether the statements of SPP personnel induced Associated Electric to fulfill the transactions in reliance on that oral agreement. Due to the purely contractual nature

of these claims, FERC's exercise of primary jurisdiction constitutes an abuse of discretion. FERC's and SPP's arguments to the contrary are misleading and unavailing, as explained further in this reply.

Associated Electric continues to request 30 minutes of oral argument per side [*see* 8th Cir. R. 28(A)(i)] to address the important legal issues raised, *i.e.*, whether FERC: (i) improperly concluded that these emergency power sales constitute energy sold under a rate in the FERC-filed SPP Tariff, and thereby prevent Associated Electric from recovering its generation costs; and (ii) abused its discretion in exercising primary jurisdiction over a dispute arising from oral agreements between Associated Electric and SPP for those emergency energy sales.

## ARGUMENT

### I. FERC's and SPP's Interpretation of the SPP Tariff Ignores Key Sections of Attachment AE, Which Are Central To, and Controlling Of, This Dispute.

FERC and SPP continue to misapply the SPP Tariff to the Emergency Energy Transactions at issue in this case. In doing so, they incorrectly conclude that the distinction between Associated Electric acting as a Balancing Authority and Associated Electric acting as a Market Participant is irrelevant. [*See* initial brief of FERC

Appellate Case: 22-3593 Page: 11 Date Filed: 09/12/2023 Entry ID: 5315160

filed in 8th Circuit Case Nos. 22-3593 and 23-1285 ("FERC Br.") at 42; initial brief of SPP filed in 8th Circuit Case Nos. 22-3593 and 23-1285 ("SPP Br.") at 32.] As Attachment AE to the SPP Tariff makes clear, however, this distinction is directly relevant. In particular, section 6.6 of Attachment AE states that "[t]he *SPP Balancing Authority* may request emergency energy assistance from an *adjacent balancing authority* . . ." [App. 212 (emphasis added); *see also* FERC Br. at 10.] Clearly, Attachment AE contemplates that SPP may request emergency energy assistance from a Balancing Authority rather than from a Market Participant. SPP, for its part, does not cite to that section of Attachment AE, arguing instead that there is no legal or regulatory basis for distinguishing the Emergency Energy Transactions from the "myriad other Integrated Marketplace Transactions in which [Associated Electric] engages." [SPP Br. at 32.] But if that were the case, there would be no need for the explicit provisions in Attachment AE addressing emergency energy assistance from a neighboring Balancing Authority, and no need for Balancing Authorities to enter into Joint Operating Agreements with each other.

FERC takes a similar tack. To support its position that Associated Electric is merely a Market Participant for purposes of its transactions with SPP, FERC notes that many other entities have executed the "standarized Service Agreement" in order to transact in the SPP Integrated Marketplace. [FERC Br. at 31-32.] The "standarized Service Agreement," *i.e.*, Market Participation Agreement, is neither controlling nor relevant and is unrelated and distinct from a Joint Operating Agreement, which is entered into by and between Balancing Authorities. The fact that Balancing Authorities execute Joint Operating Agreements, while those seeking to transact business in the SPP Integrated Marketplace execute Market Participation Agreements, clearly highlights the differences in these types of functions.

FERC next focuses on an entirely different section of Attachment AE to suggest that Associated Electric was obligated to provide SPP with emergency energy. Specifically, FERC cites to section 2.1 of Attachment AE, which requires that anyone *seeking to transact* in the Integrated Marketplace first execute a Service Agreement agreeing to take and pay for, or supply, power pursuant to the SPP Tariff. [*See* FERC Br. at 11, 35.] The problem here is that,

as a neighboring Balancing Authority, Associated Electric was not *seeking to transact* in the Integrated Marketplace. Rather, Associated Electric's Balancing Authority was rendering emergency energy assistance pursuant to urgent requests from SPP Balancing Authority operators during the height of Winter Storm Uri. As a "sophisticated actor" [SPP Br. at 20] in the Integrated Marketplace, Associated Electric's power marketing function buys or sells power "when opportune" [*id.*], *i.e.*, to serve the best interests of its members. That power marketing function is not responsible for providing emergency energy assistance. In other words, as a "sophisticated actor," Associated Electric's power marketing function makes purchases and sales in the Integrated Marketplace for purposes of serving its members' best interests. The emergency energy assistance provided by the Associated Electric Balancing Authority was rendered solely for the benefit of SPP's members.

Further, as a Regional Transmission Organization ("RTO"), SPP is tasked with ensuring that its load-serving members can serve their customers. [SPP Br. at 10.] Market Participants with such load-serving obligations must procure sufficient energy, either from their own generating resources or through purchases, to meet these

obligations. During Winter Storm Uri, Market Participants were unable to satisfy these load obligations, forcing SPP to take extraordinary measures by calling upon neighboring Balancing Authorities for emergency energy assistance. Such circumstances are wholly distinct from those in *Old Dominion Electric Cooperative*, 892 F.3d 1223 (D.C. Cir. 2018) ("*Old Dominion*")—a case upon which both FERC and SPP rely for their respective position that the SPP Tariff rate applies to the Emergency Energy Transactions. [FERC Br. at 38, 44, 52; SPP Br. at 42-43.] In that case, Old Dominion Electric Cooperative ("ODEC") was "a load-serving entity" (as opposed to a Balancing Authority) in the markets operated by PJM Interconnection, L.L.C. ("PJM"), and owned generation units that were "obligated to be ready to provide energy when needed." [App. 095-096 (citing *Old Dominion Elec. Coop.*, 151 FERC ¶ 61,207, at PP 2, 26 (2015)).] Pursuant to those load-serving obligations, ODEC received dispatch instructions from PJM and had to purchase natural gas during a period of extremely high prices and consequently, under the Market Participation provisions of the PJM tariff, was not owed reimbursement of the incrementally higher generation cost. [App. 096.]

By contrast, Associated Electric is not a load-serving entity in the SPP region and is not obligated to run its generation units on a ready-to-serve basis for the benefit of SPP load. [*See id.*] In addition, ODEC had prior notice of the price cap in effect under the filed PJM tariff and applicable to the transactions at issue, whereas SPP led Associated Electric to believe that the Emergency Energy Transactions would be directly settled between the two Balancing Authorities and outside the confines of the SPP Tariff. While the SPP Market Participation Agreement requires Associated Electric to follow the terms of the SPP Tariff when its marketing function is making purchases and sales in the Integrated Marketplace, it does not contain any provisions concerning emergency energy assistance or any limitations on a neighboring Balancing Authority's ability to bilaterally agree to a negotiated rate in a Joint Operating Agreement.

Typically, Joint Operating Agreements between Balancing Authorities contain the rates, terms, and conditions for emergency energy sales. The 2008 Joint Operating Agreement between SPP and Associated Electric does not. [*See* initial brief of Associated Electric filed in 8th Circuit Case Nos. 22-3593 and 23-1285 ("Associated Electric Br.") at 25-37.] As Associated Electric has previously

explained, that particular Agreement has its origins in 2004 agreement between Associated Electric and SPP, the 2004 Transmission Coordination Agreement, which, at that time, did not address emergency energy sales. Thus, SPP incorrectly asserts that the history of the 2008 Joint Operating Agreement as a Transmission Coordination Agreement is irrelevant. [*See* SPP Br. at 36.] Instead, that history matters because, as discussed *infra* in section II, there is no filed rate to apply to the Emergency Energy Transactions in the absence of applicable rates, terms, or conditions in the 2008 Joint Operating Agreement. FERC and SPP continue to fail to point to any mechanism in the SPP Tariff negating a Balancing Authority's right to negotiate an emergency energy rate. SPP's reliance on *Alliant Energy v. Nebraska Public Power District,* 347 F.3d 1046, 1050 (8th Cir. 2003) ("*Alliant Energy*") therefore is misplaced since *Alliant Energy* involved a FERC-filed agreement containing applicable rates, terms, and conditions. If AECI and SPP had agreed in the 2008 Joint Operating Agreement to an Emergency Energy Transaction rate, then that negotiated rate on file with FERC would indisputably be applicable to the sales at issue in this proceeding. However, the 2008 Joint Operating Agreement does not contain such a rate. Thus, in the

absence of any rate on file with FERC and applicable to the sales at issue in this proceeding, Associated Electric correctly pursued its right to recover the actual costs associated with the disputed transactions before the District Court.

## II. Neither the SPP Tariff Nor the Filed Rate Doctrine Is Applicable to This Dispute.

FERC and SPP continue to argue, contrary to the record evidence, that FERC correctly applied the SPP Tariff rate to the Emergency Energy Transactions, and that Associated Electric's attempt to recover its actual costs associated with the disputed transactions violates the filed rate doctrine. [*See, e.g.*, FERC Br. at 35-40; SPP Br. at 23-44.] However, as explained in Associated Electric's initial brief and discussed in further detail below, these assertions are unsupported by the underlying facts.

As previously stated, the 2008 Joint Operating Agreement does not contemplate or set forth a rate for emergency energy sales, and the Market Participation Agreement likewise does not govern the provision of emergency energy assistance between neighboring Balancing Authorities. Associated Electric's initial brief addresses both agreements and the SPP Tariff in detail, and explains why there

is no FERC-filed rate applicable to the disputed transactions. [*See* Associated Electric Br. at 25-41.] Rather than repeat those arguments here, Associated Electric's reply is intended to correct specific misstatements by FERC and SPP as necessary to clarify the record and aid the Court's understanding of the issues in this proceeding.

In particular, FERC and SPP incorrectly claim that the filed rate doctrine required FERC to assert primary jurisdiction over the disputed transactions and preclude the relief sought by Associated Electric in the District Court proceeding. In doing so, both FERC and SPP mischaracterize the underlying facts. In particular, FERC notes that section 205 of the Federal Power Act, from which the filed rate doctrine is derived, applies to "[a]ll rates and charges made, demanded, or received by any public utility." [FERC Br. at 3.] SPP also explains that, under section 205, "all jurisdictional utilities must file all rates, contracts, and tariffs for [FERC] review *before* such rates, contracts, and tariffs can go into effect" [SPP Br. at 4], and that "public utilities are prohibited from entering into oral contracts for FERC-jurisdictional transactions" [*id.* at 6]. However, Associated Electric is exempt from the Federal Power Act's definition of "public

Appellate Case: 22-3593 Page: 19 Date Filed: 09/12/2023 Entry ID: 5315160

utility" by virtue of 16 U.S.C. § 824(f) [*see* App. 082], and therefore is not a "regulated utility" who "must file with [FERC] 'schedules showing all rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services.'" [FERC Br. at 4.]

FERC explicitly acknowledges Associated Electric's non-jurisdictional status, observing that "unlike Southwest, [Associated Electric] is not a 'public utility' that must file all of its rates, charges, and contracts with [FERC]." [*Id.* at 12.] Despite this acknowledgement, FERC and SPP continue to misapply the statutory provisions of the Federal Power Act to the Emergency Energy Transactions at issue in this proceeding, regardless of the fact that Associated Electric is a non-jurisdictional utility and the Emergency Energy Transactions were not subject to any FERC-filed rate schedule or agreement. In the absence of any applicable FERC-filed agreement governing the Emergency Energy Transactions, this dispute concerns an oral contract for non-jurisdictional sales. As previously explained, the contractual claims that Associated Electric has asserted against SPP were properly brought before the District Court as they do not implicate any FERC-jurisdictional rate. [*See,*

*e.g.*, Associated Electric Br. at 55-56; App. 085-090.] FERC currently does not "review and assess rates, terms, and conditions" of Associated Electric's other energy sales; thus, allowing the District Court to address Associate Electric's sales in this instance would not "deprive FERC and the public of the ability to review and assess rates, terms, and conditions for such transactions." [SPP Br. at 6.] In fact, FERC recently affirmed this jurisdictional limit with respect to the rates, terms, and conditions associated with activities of non-public utilities in FERC Order No. 2023 in the context of defining the phrase "affected system transmission provider."[1]

Moreover, Associated Electric is not asking FERC or the courts to "alter or set aside a binding written contract" [*id.* at 20], or to waive

---

[1] Specifically, in FERC Order No. 2023, FERC stated: "[i]n this final rule, an affected system transmission provider refers to a public utility transmission provider as [FERC] does not have jurisdiction over the rates, terms, or conditions of service of non-public utility transmission providers. Thus, the requirements adopted in this final rule pertaining to affected system transmission providers are limited to public utility transmission providers." *Improvements to Generator Interconnection Procedures and Agreements*, Order No. 2023, 184 FERC ¶ 61,054, at P 1033 (2023). Here, the relationship between neighboring Balancing Authorities such as Associated Electric and SPP is conceptually similar to the relationship between affected systems, *i.e.*, electric systems other than the transmission provider's electric system that may be affected by new interconnections and/or power flows on that system.

or otherwise "ignore" the filed rate doctrine [FERC Br. at 52]. There is no filed rate applicable to the Emergency Energy Transactions, which are not governed by the SPP Tariff, the 2008 Joint Operating Agreement, or the Market Participation Agreement. FERC's and SPP's reliance on *Old Dominion* therefore is misplaced, as noted above, because in that case ODEC was seeking waiver of PJM tariff provisions—that all parties stipulated were applicable to the transactions at issue—to award ODEC its requested relief.

Similarly, SPP's references to additional "tariff-based complaints" currently pending before FERC are inapposite given that Associated Electric is not "look[ing] to extra-tariff means . . . to obtain additional compensation." [SPP Br. at 47.] These "tariff-based complaints" are more appropriately analogized to *Old Dominion* than to the instant dispute. Here, what is "uncommon" is not the extreme weather event or the associated operational emergency that led to energy shortfalls in the SPP region, but the absence of any written agreement governing the Emergency Energy Transactions at issue. [*Id.*] Accordingly, Associated Electric is not seeking "special treatment . . . for which the filed rate doctrine was created." [FERC Br. at 32.] Rather, because neither the SPP Tariff nor any FERC-jurisdictional

Appellate Case: 22-3593 Page: 22 Date Filed: 09/12/2023 Entry ID: 5315160

agreement applies to the Emergency Energy Transactions, Associated Electric correctly decided to pursue its claims against SPP before the District Court, and FERC abused its discretion by exercising primary jurisdiction in the absence of a controlling FERC-jurisdictional agreement.

FERC's references to *Arkansas Louisiana Gas Co. v. Hall*, 453 U.S. 571 (1981) and *Burlington Res., Inc. v. FERC*, 513 F.3d 242 (D.C. Cir. 2008) are also inapposite. [*Id.* at 39.] These cases involved private contracts for the sale of gas wherein the parties sought to enforce contractual price terms that were higher than the federal price ceiling applicable to sales of gas under the Natural Gas Act. Here, there is no federal price ceiling applicable to the energy sales at issue, and the costs for which Associated Electric seeks to be compensated are not comparable to illegal rates exceeding a statutory maximum price. Further, neither case dealt with retrospective settlement agreements concerning past payments for disputed transactions. Associated Electric is not seeking to enforce a contractual price on a going-forward basis, but specifically is concerned with settling its uncompensated costs for the Emergency Energy Transactions that have already taken place.

Appellate Case: 22-3593 Page: 23 Date Filed: 09/12/2023 Entry ID: 5315160

Recognizing the significance of whether a FERC-filed rate applies to the Emergency Energy Transactions, FERC argues that "[s]o long as the [SPP Tariff] applied to the sales, it was simply irrelevant whether certain [SPP] and [Associated Electric] personnel intended to or did form extra-Tariff oral agreements for higher rates." [FERC Br. at 19.] The reverse is also true. Since the SPP Tariff does not apply to the Emergency Energy Transactions for the reasons stated above and in Associated Electric's initial brief, the respective intent and understanding of Associated Electric and SPP in entering into an oral contract concerning the Emergency Energy Transactions is directly relevant to the assessment of costs and associated charges (not "rates," as FERC calls them) that Associated Electric is seeking to recover through its enforcement action in the District Court proceeding.

To that end, the District Court was, and remains, the proper venue to evaluate the oral agreements between Associated Electric and SPP. Namely, the District Court remains best equipped to determine whether Associated Electric is entitled to receive compensation for the actual costs it incurred to sell SPP power under emergency conditions in the absence of a controlling FERC-filed rate.

Appellate Case: 22-3593 Page: 24 Date Filed: 09/12/2023 Entry ID: 5315160

Any attempts by FERC and SPP to characterize the dispute as challenging a FERC-filed rate are incorrect and misleading. [*See, e.g*, *id.* at 5 ("Neither courts nor even [FERC] may retroactively alter a filed rate."); *id.* at 18 ("[T]he dispute implicate[s] [FERC's] obligation to ensure that the rates . . . of wholesale electric energy sales are just and reasonable and consistent with the rate on file with [FERC].") (internal quotation marks and citation omitted); SPP Br. at 10 ("[T]he RTO cannot modify those generally applicable tariffs through a bilateral contract with a single generator, and any informal, private agreement . . . equally cannot serve to modify [the RTO's] filed tariff.") (internal quotation marks and citation omitted).

## III. The Fact that Associated Electric Submitted E-Tags for the Emergency Energy Transactions Does Not Support FERC's Reasoning in the Underlying Orders.

The fact that Associated Electric submitted e-Tags for the Emergency Energy Transactions at issue in this proceeding does not support FERC's reasoning in the underlying orders, nor is it dispositive of FERC's conclusion that the Emergency Energy Transactions are subject to the SPP Tariff for purposes of determining appropriate compensation. As a threshold matter, FERC incorrectly claims that Associated Electric failed to contest the relevance of its

Appellate Case: 22-3593 Page: 25 Date Filed: 09/12/2023 Entry ID: 5315160

use of e-Tags or suggest that e-Tags are "purely ministerial" in its request for rehearing of FERC's Initial Order. [FERC Br. at 46.] To the contrary, Associated Electric explained in its rehearing request that FERC's arguments in the Initial Order regarding Associated Electric's use of e-Tags "are post hoc rationalizations that do not change the nature of the contractual understanding between [Associated Electric] and SPP." [App. 348.] Further, "[a]t issue is not how the transactions were consummated but the circumstances giving rise to the transactions and the parties' understanding regarding those transactions." [*Id.*] Therefore, Associated Electric did in fact question the relevance of its use of e-Tags in the underlying FERC proceeding.

Next, FERC incorrectly claims that Associated Electric's e-Tagging "corroborates its chosen rate namely, [the rate] for imports into the real-time balancing market." [FERC Br. at 47.] FERC also claims that Associated Electric "itself submitted e-Tags to effect sales of power into [SPP's] Integrated Marketplace, and those submissions substantiate the existence of import interchange transactions." [*Id.* at 14.] SPP similarly argues that the submission of e-Tags constituted Associated Electric's "proposal to provide Energy from a source external to the SPP Balancing Authority Area . . . *i.e.*, an Import

Appellate Case: 22-3593 Page: 26 Date Filed: 09/12/2023 Entry ID: 5315160

Interchange Transaction Offer." [SPP Br. at 38.] However, these references to the e-Tags submitted with the Emergency Energy Transactions are a red herring given that Associated Electric clearly did not choose to receive the SPP Tariff import rate in lieu of receiving compensation sufficient to cover its actual costs associated with providing the energy requested by SPP. Typically, all energy transactions entering and/or leaving the SPP Balancing Authority Area must be electronically tagged and, given SPP's urgent request, Associated Electric believed the submission of e-Tags would be the quickest and most reliable way to schedule the Emergency Energy Transactions and deliver the energy to the SPP Balancing Authority for the benefit of SPP members. The fact that Associated Electric effectuated the Emergency Energy Transactions "using established 'e-Tag' procedures for imports into the Integrated Marketplace" [FERC Br. at 23] is not dispositive of any agreement or understanding between Associated Electric and SPP regarding appropriate compensation for the Emergency Energy Transactions. The Court should therefore disregard FERC's and SPP's arguments to that effect.

## IV. No Special Expertise Is Required to Adjudicate This Dispute.

FERC continues to misapply the factors identified in *Arkansas Louisiana Gas Co. v. Hall*, 7 FERC ¶ 61,175, at 61,322, *reh'g denied*, 8 FERC ¶ 61,031 (1979) ("*Arkla*") to justify its exercise of primary jurisdiction in this proceeding, which constitutes an abuse of FERC's discretion. Contrary to FERC's assertion that Associated Electric "identifies no error in [FERC's] application of any factor, much less all three" [FERC Br. at 29], Associated Electric provided significant evidence and detailed analysis in its initial brief and in the underlying proceeding demonstrating that the issues raised in Associated Electric's Federal Complaint do not implicate any of the *Arkla* factors. [*See* Associated Electric Br. at 47-54; App. 092-095; App. 350-351.]

In particular, with respect to the first *Arkla* factor, Associated Electric repeatedly has explained that FERC possesses no "special expertise which makes the case peculiarly appropriate for a FERC decision." [Associated Electric Br. at 47-50 (citing *Arkla*, 7 FERC ¶ 61,175 at 61,322).] For example, no special expertise is required to determine whether an oral contract was formed—the crux of the issue underlying Associated Electric's Federal Complaint—and a

court does not need to understand specialized terms such as Interchange Transactions or Locational Marginal Pricing [*see* FERC Br. at 30] in order to recognize the reliance interest induced by SPP personnel's statements to Associated Electric personnel regarding settlement of the Emergency Energy Transactions.

Further, Associated Electric is not requesting that FERC be required to "allow special exception for one unfiled verbal arrangement," so there is no risk of undermining "the predictability provided by the [SPP] Tariff" or discriminating "against other parties." [*Id.* at 21.] In fact, to the best of Associated Electric's knowledge, all other neighboring Balancing Authorities in the SPP region have Joint Operating Agreements with SPP that contain bilaterally negotiated provisions governing the transmission and sale of emergency energy. The 2008 Joint Operating Agreement recently was amended after Winter Storm Uri to add provisions governing future sales of emergency energy as well. [*See* Associated Electric Br. at 50-51; App. 370 ¶ 29 & n.54.] Accordingly, as Associated Electric previously explained, resolution of this dispute by a court would not implicate a need for uniformity or broader policy questions best left to FERC's discretion as the regulator. [*See* Associated Electric Br. at 50-52.]

Appellate Case: 22-3593     Page: 29     Date Filed: 09/12/2023 Entry ID: 5315160

Rather, the circumstances surrounding the disputed Emergency Energy Transactions are narrow, highly specific, and not addressed in the SPP Tariff or other FERC-jurisdictional agreement. Thus, while FERC argues that it "had no discretion under the filed rate doctrine to give special favor to these particular side deals" [FERC Br. at 24], it did have discretion in determining whether to exercise primary jurisdiction and, moreover, FERC erred in exercising such discretion under the circumstances given that no filed rate applies here. FERC's glib reference to "side deals" also ignores the fact that section 6.6 of SPP Tariff Attachment AE expressly contemplates settlement of emergency energy transactions at bilaterally negotiated rates, providing that "[t]he joint operating agreements *may include additional market-related charges or credits* for the provision of emergency energy assistance." [SPP Tariff, Attachment AE, § 6.6 (emphasis added).]

In addition to the errors identified above with respect to FERC's analysis of the facts in this proceeding, FERC appears to confuse the correct standard established in *Arkla* and applied in subsequent decisions. Specifically, FERC quotes from the original *Arkla* decision, which construes the three separate *Arkla* factors conjunctively. [*Id.*

at 29.] But FERC then cites to *Idaho Power Co.*, 41 FERC ¶ 61,252, 1987 WL 118681, at *3 (1987) ("*Idaho Power*") for the proposition that a disjunctive application of the factors would be appropriate. [*Id.*] While *Idaho Power* does articulate a disjunctive formulation of the *Arkla* standard—stating that "[p]rimary jurisdiction is properly asserted where [FERC] has special expertise in the issue at hand, where there is a need for uniformity of interpretation, *or* where resolution of the issue will affect the ability of [FERC] to carry out its regulatory responsibilities"—*Idaho Power* actually considered and applied all three factors in reaching the decision in that case. Thus, to the extent FERC is suggesting that satisfaction of only one of the *Arkla* factors would be sufficient basis for FERC to exercise primary jurisdiction, FERC appears to misconstrue the *Arkla* standard.

Whether or not this Court reviews FERC's exercise of jurisdiction in the underlying orders *de novo* or for an abuse of discretion, the outcome should be the same. The Emergency Energy Transactions were not governed by any applicable tariff or FERC-jurisdictional agreement, and were (through oral statements) negotiated by and between Associated Electric and SPP personnel on a purely bilateral basis. As such, FERC's after-the-fact application of

the *Arkla* factors to assert jurisdiction and preclude the relief sought by Associated Electric, in accordance with its understanding of and reliance on those oral statements, is void under the circumstances. FERC routinely has declined to exercise jurisdiction in cases involving contract and tort claims, and courts previously have acknowledged that FERC has no special expertise in such matters. [*See* Associated Electric Br. At 49-50; App. 092-095 (citing, *e.g.*, *Hartree Partners, LP v. N. Nat. Gas Co.,* 176 FERC ¶ 61,017, at P 21 (2021); *Cottonwood Wind Project, LLC v. Neb. Pub. Power Dist., Inc.*, 155 FERC ¶ 61,285, at P 27 (2016); *Southern Md. Elec. Coop., Inc. v. J.P. Morgan Ventures Energy Corp.*, 155 FERC ¶ 61,164, at P 22 (2016); *Bd. of Pub. Works v. Wis. Power & Light Co.,* 613 F. Supp. 2d 1122, 1131 (D. Minn. 2009); *Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*, 494 F. Supp. 2d 401, 415 (M.D. La. 2007)).]

Consistent with this well-established policy of deferring to an appropriate court to resolve such matters, FERC should have dismissed SPP's petition and deferred to the District Court in which Associated Electric filed its Federal Complaint addressing contract and tort claims outside of FERC's special expertise.

Appellate Case: 22-3593 Page: 32 Date Filed: 09/12/2023 Entry ID: 5315160

## **CONCLUSION**

For the reasons stated, the Court should grant Associated Electric's petition for review, vacate the order below, and remand the case to FERC with directions to deny SPP's request that FERC exercise primary jurisdiction in this matter and grant Associated Electric's Motion to Dismiss.

24

Appellate Case: 22-3593 Page: 33 Date Filed: 09/12/2023 Entry ID: 5315160

Respectfully submitted this
11th day of September, 2023,

**THOMPSON COBURN LLP**

By: */s/ Lawrence C. Friedman*
Lawrence C. Friedman (MO/34382)
Matthew Dollan (MO/71867)
One US Bank Plaza
St. Louis, Missouri 63101
(314) 552-6000
(314) 552-7000 FAX
lfriedman@thompsoncoburn.com
mdollan@thompsoncoburn.com

Peter K. Matt
Nicole S. Allen
1909 K Street, N.W.
Suite 600
Washington, D.C. 20006-1167
(202) 585-6900
(202) 585-6969 FAX
pmatt@thompsoncoburn.com
nallen@thompsoncoburn.com

Appellate Case: 22-3593 Page: 34 Date Filed: 09/12/2023 Entry ID: 5315160

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4,949 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(A)(5) and the type-style requirements of Fed. R. App. P. 32(A)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word 2021 in Bookman Old Style 14 point font.

*/s/ Lawrence C. Friedman*
Lawrence C. Friedman

*Counsel for Petitioner*
*Associated Electric Cooperative, Inc.*

Dated: September 11, 2023

## **CERTIFICATE OF VIRUS CHECK**

Pursuant to Eighth Circuit Rule 28A(h)(2), the undersigned certifies that the electronic version of this brief has been scanned for viruses and is virus-free.

*/s/ Lawrence C. Friedman*
Lawrence C. Friedman

*Counsel for Petitioner*
*Associated Electric Cooperative, Inc.*

Dated: September 11, 2023

Appellate Case: 22-3593 Page: 36 Date Filed: 09/12/2023 Entry ID: 5315160

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 11, 2023, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Lawrence C. Friedman*
Lawrence C. Friedman

*Counsel for Petitioner*
*Associated Electric Cooperative, Inc.*

Dated: September 11, 2023

Appellate Case: 22-3593 Page: 37 Date Filed: 09/12/2023 Entry ID: 5315160